IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Rishawn Lamar Reeder, #282918, ) | |
| ) | C/A No. 9:17-830-MBS |
| Petitioner, ) | |
| ) | |
| vs. ) | |
| ) | **ORDER AND OPINION** |
| Warden Reynolds, Lee Correctional ) | |
| Institution, ) | |
| ) | |
| Respondent. ) | |
| _____) | |

Petitioner Rishawn Lamar Reeder is an inmate in custody of the South Carolina Department of Corrections. He currently is housed at Lee Correctional Institution in Bishopville, South Carolina. This matter is before the court on Petitioner's petition for relief under 28 U.S.C. § 2254, which petition was filed on March 29, 2017.

FACTS AND PROCEDURAL HISTORY

On March 14, 2009, Bryant Miller ("Bryant"); Dwight Geter ("Dwight"); Marty; and D.G., Dwight's younger brother ("Decedent") were at Club Dream in Spartanburg County, South Carolina. Transcript of Record 84-85 ("Trial Transcript"), ECF No. 91-1. Dwight, Decedent, and Marty got into a fight with Darius Cathcart and some others. Id. at 86. Bryant, Dwight, Marty, and Decedent left the club and rode in Dwight's red Crown Victoria to a Waffle House where they sat in the parking lot for thirty or forty-five minutes. Id. at 88. They left to take Decedent home. Dwight was driving, Marty was in the passenger seat, Bryant was sitting behind Dwight, and Decedent was sitting behind Marty. At a four-way stop, a dark green Nissan pulled up next to the Crown Victoria on the driver's side and an occupant or occupants started shooting at the Crown Victoria. Bryant was shot in the neck. Bryant returned fire, and the Nissan drove off. Id. at 88-92.

It appears the bullet passed through Bryant's neck and fatally struck Decedent in the neck. Id. at 121. The group dropped off Marty at the Geters' house, talked to Decedent's mother, and drove to Mary Black Hospital, where Decedent was pronounced dead upon arrival. Id. at 128.

Around the same time, Jack Christopher Durham of the Spartanburg County Sheriff's Office received a call that there were shooting victims at Mary Black Hospital and Spartanburg Regional Hospital. Id. at 143-45. He traveled to Spartanburg Regional Hospital and was advised Cathcart had a grazing injury to his right side, and that Petitioner had been shot in the hand or wrist. Id. at 151.

Cathcart was brought into the Sheriff's Office for questioning. Cathcart told Durham that he (Cathcart), Petitioner, and an individual named Black had been at Club Dream and that he (Cathcart) had been driving his girlfriend's grey Nissan. Cathcart stated that he was taking Black and Petitioner home when a vehicle came up beside them and the occupants started shooting. According to Cathcart, the shooting occurred while he, Petitioner, and Black were entering I-85. Black dropped them off at Spartanburg Regional Hospital and drove off. Id. at 158-59.

Robert Charles Talanges of the Spartanburg County Sheriff's Office also responded to the Spartanburg Regional Hospital, where he collected gunshot residue and buccal swabs from Cathcart, Michael Crossley, and Petitioner. Id. at 257-59.

Tim Davis, Patrick Cockrell, and Michael Shawn Nix of the Spartanburg County Sheriff's Office responded to the scene at the four-way stop and located some shell casings and an unfired bullet. Id. at 229, 234. On March 15, 2009, David Hogsed of the Spartanburg County Sheriff's Department executed a search warrant on the Crown Victoria, which had been impounded. Hogsed located ten bullet holes on driver's side of the vehicle, a lead projectile fragment from the top of the dashboard on the driver's side, a cartridge casing on the top of the dashboard on the passenger's side,

a cartridge case on the right side of the floorboard, an unfired bullet on the right side rear seat, a projectile on the left side rear seat, a cartridge case on the front center console, a cartridge case in the driver's seat, lead projectile from inside the driver's door, among other things. Id. at 239-40.

Hogsed, Davis, and Talanges searched a Nissan two days later that had been set on fire. Hogsed identified a cartridge casing inside the driver's seat. Id. at 244. Davis located a cartridge casing on the front passenger floor area. Id. at 296. Talanges located bullet holes and bullet strikes to the passenger side, as well as a cartridge case in the back floor area. Id. at 293-95. The vehicle belonged to William Dendy, Cathcart's uncle, but Cathcart made the payments and drove the car. Id. at 279-80. No crime scene was identified at the I-85 on-ramp described by Cathcart. Id. at 233.

Cathcart and Petitioner were indicted and charged with assault with intent to kill, murder, and assault and battery with intent to kill. They proceeded to trial before the Honorable Roger L. Couch and a jury on May 9 - 12, 2011. Petitioner was represented by Michael Brown, Esquire. Among other things, Ila Simmons, forensic chemist of the South Carolina Law Enforcement Division (SLED) forensic laboratory trace evidence department was qualified as an expert in the field of gun shot residue testing. Id. at 319-21. She testified that residue was found on both of Petitioner's palms as well as the back of his left hand. Residue was found on both of Cathcart's palms. No gunshot residue was detected on Michael Crossley. Id. at 325. Kenneth H. Whitler of SLED was qualified as an expert in the field of firearms identification and testing. He testified that he had tested eleven .40 caliber Smith and Wesson cartridge cases and a 9-millimeter cartridge case. Of those, five were fired by one firearm and five were fired by another firearm. The eleventh cartridge case could have been fired by one of those two firearms based on the class characteristics, or a third weapon could have been involved. Whitler further testified that a third weapon was required to shoot the 9-

3

millimeter cartridge, and that four weapons was the maximum number of weapons that could have been involved, based on the fragments that could not be identified as coming from a particular gun. Id. at 354-56. The jury also was shown a surveillance video from a business in the area of the four-way stop that revealed a vehicle traveling toward the four-way stop followed by another vehicle with its headlights off. When the cars reached the four-way stop, the shooting commenced. Id. at 303, 378-79.

The jury found Cathcart and Petitioner guilty on all charges. Id. at 465-66. The trial judge sentenced Cathcart to 20 years incarceration as to assault and battery with intent to kill, 10 years as to assault with intent to kill, and 45 years as to murder, to run concurrently. Id. at 482. The trial judge sentenced Petitioner to 20 years incarceration as to assault and battery with intent to kill, 10 years as to assault with intent to kill, and to life as to murder, to run concurrently. Id. at 484.

Petitioner appealed his conviction and sentence to the South Carolina Court of Appeals. Notice of Appeal, ECF No. 9-4. On August 30, 2011, the appeal was dismissed because Petitioner, through counsel, failed to timely order the transcript and/or serve and file the initial brief of appellant and designation of matter. Order of Dismissal, ECF No. 9-5. Remittitur was issued on September 14, 2011. Remittitur, ECF No. 9-6.

On January 23, 2012, Petitioner filed for post-conviction relief (PCR), as amended on May 24, 2012, April 16, 2013, April 19, 2013, January 6, 2014, April 7, 2014, May 5, 2014, and October 22, 2014. Applications for Post-Conviction Relief, ECF No. 9-1 (pp. 490-95; 498-500); ECF No. 9-2 (pp. 12-13; 22-23; 24; 25-27; 32-69. On November 3, 2014, Petitioner appeared before the Honorable R. Keith Kelly for a PCR hearing. Petitioner was represented by J. Falkner Wilkes, Esquire. According to the PCR judge, Petitioner raised the following issues:

1. Ineffective assistance of counsel in that;
    a. Counsel failed to use exculpatory evidence,
    b. Counsel failed to object to alleged non-testifying codefendant's out of court statements through investigators' testimonies,
    c. Counsel failed to confront and cross-examine Officer Heather Forrester,
    d. Counsel requested a self-defense charge,
    e. Counsel failed to conduct an independent investigation,
    f. Counsel failed to interview alibi witnesses,
    g. Counsel failed to present the Spartanburg Regional Hospital video,
    h. Counsel failed to prevent alleged codefendant with identification of shooter,
    i. Counsel failed to make a motion for severance,
    j. Counsel failed to object to jury charge instructing that malice could be inferred from the use of a deadly weapon,
    k. Counsel failed to present the gunshot residue analysis information forms for [Petitioner] and alleged codefendant,
    l. Counsel failed to call Loren Williams as a witness,
    m. Counsel failed to object to the admission of [Petitioner's] gunshot residue test,
    n. Counsel failed to move to suppress gunshot residue test pursuant to SCRE 403,
    o. Counsel failed to move to quash the indictments before the jury was sworn,
    p. Counsel failed to investigate alleged deal between State and alleged codefendant.
2. Due process violations, in that;
    a. Violation of Sixth Amendment Confrontation Clause.
3. Prosecutorial misconduct, in that;
    a. <u>Brady</u> violation.

Order of Dismissal 2-3, ECF No. 9-3, 46-47.

Of these grounds raised by Petitioner, Grounds 1.e, 1.g, and 1.j are pertinent to the within § 2254 petition because, as discussed below, the remaining grounds for relief have been procedurally defaulted.

As to Ground 1.e, Petitioner called Glenn William Kelly to testify on his behalf at the PCR hearing. Transcript of Record 89 ("PCR Transcript"), ECF No. 9-2, 160. Kelly testified that he had

5

been near the four-way stop and had seen a car pull up with the headlights on. Then he saw a green Mustang pull up behind the first car and the occupants begin shooting. Id. at 90, ECF No. 9-2, 161. Kelly called 911 and reported the information. Id. at 91, ECF No. 9-2, 162. Kelly testified that he was about fifteen feet away from the shooting and that he can recognize the make and model of a vehicle just by the headlights from thirty feet away. Id. at 92, ECF No. 9-2, 163. Kelly admitted he had been drinking alcoholic beverages the night of the shooting. Id.

Trial counsel testified that he had received information regarding Kelly during discovery and had spoken with Petitioner regarding the information early on, when Petitioner claimed to have not been at the crime scene. According to trial counsel, Petitioner initially claimed to have alibi witnesses to the fact that he was getting robbed at the time of the shooting, and that it was a coincidence that he was at the hospital at the same time as Cathcart. Id. at 32, ECF No. 92, 103. Later, Petitioner told trial counsel that he was in the car with Cathcart at the time of the shooting, but that he had nothing to do with the altercation at the club. According to trial counsel, Petitioner claimed someone pulled up to him and Cathcart and started shooting at them. Petitioner then blacked out until he arrived at the hospital. Id. Trial counsel did not follow up on Kelly's statement after Petitioner admitted to being in the car with Cathcart. See id. at 49, ECF No. 9-2, 120. Trial counsel further testified that he believed Kelly's claim that he had seen a green Mustang to not be exculpatory, given that it was Cathcart's car that was later found burning, both Cathcart and Petitioner had sustained gunshot wounds, and one of the victims of the shooting identified a Nissan, and not a Mustang. Id. at 82, ECF No. 9-2, 153.

Ground 1.g refers to videotapes taken at Spartanburg Regional Hospital that showed Cathcart and Petitioner arriving at the hospital and entering together. The hospital videotape's time stamp

6

showed approximately the same time as the time stamp of the videotape introduced at trial of the shooting. At the PCR hearing, trial counsel testified that he did not introduce the hospital videotape as proof Petitioner could not have been at the crime scene because (1) his experience was that it would have been easy for someone to "distinguish what was occurring with the time stamp, coupled with the medical records of actual admittance, the time the investigators came, hospital personnel, and actually when [Petitioner] . . . was seen, along with Mr. Cathcart. So I think that would be very easy to point out the differences between the camera and the actual time period in which they were seen by medical personnel." Id. at 17, ECF No. 92-2, 88. Trial counsel also testified, "But most importantly the fact that [Petitioner] could have been easily identified appearing with his co-defendant on the hospital tape." Id. at 12, ECF No. 9-2, 83.

Regarding Ground 1.j, the trial judge instructed the jury as to the "malice aforethought" element present in each offense charged in the indictment. As to malice, the trial judge stated:

> Malice is defined as hatred or ill will or hostility toward another person. It is the intentional doing of a wrongful act without just cause of [*sic*] excuse. Again, with the intent, there's that thing about intent, to inflict an injury or under circumstances that the law would infer an evil intent. . . .
>
> . . . .
>
> Malice may be inferred from conduct showing a total disregard for human life. Inferred malice may arise when a deed is done by a person using a deadly weapon. A deadly weapon is any article or instruments or substance which is likely to cause death or great bodily harm. Now, whether an instrument is used as a deadly weapon is a question of fact for a jury to decide.
>
> The following are examples which, under the law, have been determined to be deadly weapons. Those include a pistol, a shotgun, a rifle, a dirk, a dagger, a knife, a slingshot, metal knuckles, razors, gasoline, fire bombs. All of those things are, have been shown in cases to have been used as deadly weapons, but the question of whether it is a deadly weapon is a question of fact for the jury to decide.

Trial Transcript 448-49, ECF No. 9-1, 452-53.

    The trial judge also charged self-defense:

> Now, the defendants have raised the defense of self-defense, and I'm going to talk to you a little bit about the defense of self-defense. Self-defense would constitute a complete defense, and if it is established, you must fine the defendants not guilty.
>
> Now, the State has the burden, burden of disproving self-defense beyond a reasonable doubt. If you have a reasonable doubt of the defendant's guilt, after considering all the evidence including the evidence of self-defense, then you would find the defendant not guilty. However, on the other hand, if you have no reasonable doubt of the defendant's guilt, after considering all of the evidence and any evidence of self-defense, you must find the defendants guilty.
>
> Now, there's three elements that are required in order to establish a defense of self-defense. First, the defendant must be without any fault in bringing about the difficulty which occurs between the parties involved. If the defendant's conduct was of a type which would reasonably calculate being, reasonably calculated to and did provoke a deadly assault, the defendant would not, would be at fault in bringing on the difficulty and would not be entitled to an acquittal based on self-defense.
>
> . . . .
>
> The second element is imminent danger. The second element of self-defense is that a defendant was actually in imminent danger of death or serious bodily injury or that the defendant actually believed that he was in imminent danger or death or serious bodily injury. If the defendant was actually in imminent danger, it must be shown that the circumstances would of warranted a person of ordinary firmness or courage to strike the fatal blow to prevent death or serious bodily injury to himself.
>
> . . . .
>
> The third element is that there's no other way to avoid danger. The final element of a defense of self-defense is that the defendant had no probable way to avoid danger or death of [*sic*] bodily injury other than to act as the defendant acted in this particular instance.

Id. at 452-54, ECF No. 9-1, 455-58.

    Trial counsel testified that he had not objected to the malice charge because he did not find

it to be inconsistent with self defense. PCR Transcript, 19; ECF No. 9-2, 90. Trial counsel admitted that there was some basis to argue the inference of malice charge was improper under State v. Belcher, 685 S.E.2d 802 (S.C. 2009). PCR Transcript 19, ECF No. 9-2, 90. In Belcher, the South Carolina Supreme Court held that "where evidence is presented that would reduce, mitigate, excuse or justify a homicide (or assault and battery with intent to kill) caused by the use of a deadly weapon, juries shall not be charged that malice may be inferred from the use of a deadly weapon." Belcher, 685 S.E.2d at 810.

The PCR judge denied and dismissed Petitioner's PCR application, finding that Petitioner had failed to meet his burden of proof as to all issues. Id. 3-24, ECF No. 9-3, 47-68. Specifically as to Ground 1.e, the PCR judge found credible trial counsel's testimony and that Petitioner had failed to show how that any additional investigation of Kelly's statement would have affected the outcome of trial. As to Ground 1.g, the PCR judge found that trial counsel had articulated valid strategic reasons for not offering the videos from Spartanburg Regional Hospital as evidence. As to Ground 1.j, the PCR judge found no evidence in the record that would "reduce, mitigate, excuse, or justify the homicide." The PCR judge noted that Petitioner presented no evidence at trial that he had shot the victims in self-defense; in fact, he had denied shooting a gun at all the day of the incident. The PCR judge recounted the testimony of Byrant and Dwight, statements of Cathcart to the police and the destruction of Cathcart's vehicle, among other things, and concluded that Petitioner had shown neither deficient performance nor prejudice.

Petitioner filed a motion pursuant to S.C. R. Civ. P. 59(e), which was denied. Motion (Alter or Amend, Rule 59(e)), ECF No. 9-3, 69-77; Judgment in a Civil Case, ECF No. 9-3, 78-79. Petitioner, through counsel, filed a notice of appeal on or about December 19, 2014. Notice of

Appeal, ECF No. 9-7. On or about September 8, 2015, Petitioner, through counsel, filed a petition for writ of certiorari in the South Carolina Supreme Court, raising the following issues:

1.

In a case where the State presented only circumstantial evidence of guilt and petitioner received a jury instruction on self-defense, whether trial counsel's failure to object to a jury charge that malice may be inferred from the use of a deadly weapon constituted ineffective assistance of counsel in derogation of petitioner's Sixth Amendment rights?

2.

Whether trial counsel was ineffective in derogation of petitioner's Sixth Amendment rights by failing to introduce video from the hospital showing petitioner with a time stamp that was inconsistent with the time stamp from the video the police alleged showed the cars involved in the shooting?

3.

Whether trial counsel was ineffective in derogation of petitioner's Sixth Amendment rights by failing to investigate and call as a witness Glenn Kelly, who would have testified that the vehicle involved in the shooting was a Mustang, and not the Nissan linked to petitioner's co-defendant?

Petition for Writ of Certiorari 2, ECF No. 9-8, 3.

The Supreme Court denied the petition for writ of certiorari on November 9, 2016. The case was remitted to the lower court on November 29, 2016.

Petitioner timely filed his § 2254 petition on March 29, 2017. Petitioner raises the following grounds for relief:

Ground One: Ineffective Assistance of Counsel
Supporting Facts: Counsel failed to present the Spartanburg Regional Hospital video

Ground Two: Ineffective Assistance of Counsel
Supporting Facts: Counsel failed to investigate and call as a witness Glenn Kelly

Ground Three: Ineffective Assistance of Trial Counsel

Supporting Facts: requesting self-defense

Ground Four: Ineffective Assistance of Trial Counsel
Supporting Facts: failure to impeach SLED investigator Ila Simmons' testimony on gunshot residue test results

Ground Five: Ineffective Assistance of Counsel
Supporting Facts: Counsel failed to object to alleged nontestifying codefendant's out-of-court statement through investigator's testimony

Ground Six: Ineffective Assistance of Counsel
Supporting Facts: Counsel failed to confront and cross-examine Ofc. Heather Forrester

Ground Seven: Ineffective Assistance of Counsel
Supporting Facts: Counsel failed to present alleged codefendant identification of shooter

Ground Eight: Ineffective Assistance of Counsel
Supporting Facts: Counsel objecting and redacting statements on affidavit of the photo identification by Mr. Dwight [G]eter identifying Mr. Cathcart as shooter

Ground Nine: Ineffective Assistance of Counsel
Supporting Facts: Counsel failed to present Crimestoppers lead of the shooter

Ground Ten: Ineffective Assistance of Counsel
Supporting Facts: Failing to present applicant and allege codefendant Gunshot Residue Analysis information forms

Ground Eleven: Ineffective Assistance of Counsel
Supporting Facts: Failure to conduct an independent investigation

Ground Twelve: Ineffective Assistance of Counsel
Supporting Facts: Failing to interview alibi witnesses

Ground Thirteen: Ineffective Assistance of Counsel
Supporting Facts: Failure to inform to testify

Ground Fourteen: Ineffective Assistance of Counsel
Supporting Facts: Failing to motion to suppress applicant's gunshot residue pursuant to S.C. Rules of Evidence Rule 403

Ground Fifteen: Ineffective Assistance of Counsel

    Supporting Facts: Failing to motion for severance

    Ground Sixteen:  Ineffective Assistance of Counsel
    Supporting Facts:  Failing to object to jury charge instructing malice could be inferred from the use of a deadly weapon

    Ground Seventeen:  Ineffective Assistance of Counsel
    Supporting Facts:  Trial Counsel failed to present Edward Robinson's confession of the shooter

    Ground Eighteen:  Due Process of Law
    Supporting Facts: State withheld deal between State and alleged codefendant

    Ground Nineteen: Due Process of Law/Prosecutorial Misconduct
    Supporting Facts: Prosecutorial misconduct involving <u>Brady</u>

See generally Petition 6-11, 17-33, ECF No. 1.

In accordance with 28 U.S.C. § 636(b) and Local Rule 73.02, D.S.C., this matter was referred to United States Magistrate Judge Bristow Marchant for a Report and Recommendation.  The petition is governed by the terms of 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), which became effective on April 24, 1996.

Respondent filed a motion for summary judgment on June 6, 2017.  By order filed June 12, 2017, pursuant to <u>Roseboro v. Garrison</u>, 528 F.2d 309 (4th Cir. 1975), Petitioner was advised of the summary judgment procedures and the possible consequences if he failed to respond adequately. Petitioner filed a response in opposition on July 24, 2017, to which Respondent filed a reply on July 31, 2017.  On August 16, 2017, the Magistrate Judge issued a Report and Recommendation in which he determined that the PCR judge's findings and conclusions were supported in the record and not contrary to established law as to Grounds One, Two, and Sixteen.  The Magistrate Judge further found that Grounds Three through Fifteen and Seventeen through Nineteen are procedurally barred from federal habeas review. Accordingly, the Magistrate Judge recommended that Respondent's

motion for summary judgment be granted. Petitioner filed objections to the Report and Recommendation on August 28, 2017, to which Respondent filed a reply on September 8, 2017. Petitioner filed a surreply on September 21, 2017.

The Magistrate Judge makes only a recommendation to this court. The recommendation has no presumptive weight. The responsibility for making a final determination remains with this court. Mathews v. Weber, 423 U.S. 261, 270 (1976). This court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the Magistrate Judge. 28 U.S.C. § 636(b)(1). This court may also receive further evidence or recommit the matter to the Magistrate Judge with instructions. Id. This court is obligated to conduct a de novo review of every portion of the Magistrate Judge's report to which objections have been filed. Id.

## DISCUSSION

A writ of habeas corpus shall not be granted for any claim that was adjudicated on the merits in a state court proceeding unless the state court's adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The limited scope of federal review of a state petitioner's habeas claims is grounded in fundamental notions of state sovereignty. Richardson v. Branker, 558 F.3d 128, 138 (4th Cir. 2012) (citing Harrington v. Richter, 562 U.S. 86, 103 (2011)). When a federal court adjudicates a habeas corpus petition brought by a state prisoner, that adjudication constitutes an intrusion on state

13

sovereignty. Id. (citing Harrington, 562 U.S. at 103). A federal court's power to issue a writ is limited to exceptional circumstances, thereby helping to ensure that "'state proceedings are the central process, not just a preliminary step for a later federal habeas proceeding.'" Id. (citing Harrington, 562 U.S. at 103). The restrictive standard of review "'further[s] the principles of comity, finality, and federalism.'" Id. (citing Williams v. Taylor, 529 U.S. 362, 364 (2000)). "'The pivotal question is whether the state court's application of the [applicable federal legal] standard was unreasonable.'" Id. (quoting Harrington, 562 U.S. at 103). So long as fairminded jurists could disagree on the correctness of a state court's decision, a state court's adjudication that a habeas claim fails on its merits cannot be overturned by a federal court. Id. (citing Harrington, 562 U.S. at 102).

Further, a § 2254 petition filed by a person in state custody

shall not be granted unless it appears that –

(A) the applicant has exhausted the remedies available in the courts of the State; or

(B)(i) there is an absence of available State corrective process; or

   (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

28 U.S.C. § 2254(b)(1).

If a § 2254 petitioner has failed to raise a claim in state court, and is precluded by state rules from returning to state court to raise the issue, a federal court is barred from considering the filed claim, absent a showing of cause and actual prejudice. See Matthews v. Evatt, 105 F.3d 907 (4th Cir. 1997). A petitioner is required to squarely present all issues to the South Carolina appellate courts to avoid procedural default upon federal habeas review. See Joseph v. Angelone, 184 F.3d 320, 328 (4th Cir. 1999).

Law/Analysis

Petitioner contends that he received ineffective assistance of counsel. To prevail on a claim of ineffective assistance of counsel, a petitioner ordinarily must satisfy both parts of the two-part test set forth in Strickland v. Washington, 466 U.S. 668 (1984). The petitioner first must show that counsel's representation fell below an objective standard of reasonableness. Id. at 687–88. In making this determination, a court considering a habeas corpus petition "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689. However, an error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment. Id. at 691-92 (citing United States v. Morrison, 449 U.S. 361, 364–65 (1981)). "The purpose of the Sixth Amendment guarantee of counsel is to ensure that a defendant has the assistance necessary to justify reliance on the outcome of the proceeding. Accordingly, any deficiencies in counsel's performance must be prejudicial to the defense in order to constitute ineffective assistance under the Constitution." Id. at 692.

A.  Failure to Present Spartanburg Regional Hospital Video (Ground One)

The Magistrate Judge noted that credibility findings are entitled to great deference in a federal habeas action. See 28 U.S.C. § 2254(e)(1) ("[A] determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."). Citing Strickland, 466 U.S. at 689, the Magistrate Judge further observed that tactical and strategic choices made by counsel after due consideration do not constitute ineffective assistance of counsel. In addition, the Magistrate Judge determined that Petitioner had failed to show prejudice in light of the facts of the case, including

Petitioner's arriving at the hospital with Cathcart, Cathcart having been shot, Petitioner having been shot, one of the victim's identifying a car matching the description of Cathcart's car, and Cathcart's car being found riddled with bullets and burned. Accordingly, the Magistrate Judge determined that the PCR Judge's finding that trial counsel articulated a reasonable trial strategy did not resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

In his objections, Petitioner contends that the hospital videotape showing him entering the hospital twenty-eight seconds after the surveillance video of the scene of the crime demonstrates his lack of involvement in the shooting. Petitioner contends that the times relied on by trial counsel – medical records, times investigators were at the hospital, and hospital personnel – are insufficient to rebut the technology appertaining to the hospital videotape system. Petitioner contends that the Spartanburg Regional Hospital tapes would have exonerated him.

The court agrees with the Magistrate Judge that the PCR judge properly applied established federal law and that the PCR's decision that was based on a reasonable determination of the facts in light of the evidence presented. Petitioner's objections are without merit.

B. <u>Failure to Investigate Glenn Kelly</u> (Ground Two)

The Magistrate Judge recited the evidence set forth in the PCR hearing and determined that the PCR judge properly found trial counsel's performance to not be deficient under <u>Strickland</u>, and that Petitioner had failed to show any prejudice that may have resulted from trial counsel's allegedly ineffective performance. Giving due deference to the PCR judge's credibility determinations, the

Magistrate Judge determined that the PCR Judge's findings did not resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Petitioner contends that introduction of Kelly's testimony would have rebutted the state's theory of a gray 4-door Nissan, "as there has never been made a 4-door mustang in this world." Objections to Report and Recommendation 7, ECF No. 24. The court notes that the PCR judge did not find Kelly to be credible. Further, Kelly's testimony regarding a two-door Mustang would not have changed the outcome of trial, given the other evidence presented by Respondent. Moreover, Petitioner proceeded to trial on the theory that he was a innocent passenger in Cathcart's vehicle and that he and Cathcart had been shot at. The court agrees with the Magistrate Judge that the PCR judge properly applied established federal law and that the PCR's decision that was based on a reasonable determination of the facts in light of the evidence presented. Petitioner's objections are without merit.

C.    Failure to Object to Malice Charge (Ground Sixteen)

The Magistrate Judge determined that the PCR judge correctly determined that trial counsel was not ineffective for failing to object to the malice charge. Petitioner does not object to the Magistrate Judge's decision. In the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005). The court has thoroughly reviewed the record and finds no clear

error.

C. <u>Remaining Grounds for Relief</u> (Grounds Three through Fifteen and Seventeen through Nineteen)

The Magistrate Judge found that the remaining grounds for relief are procedurally barred because they were not properly preserved for review in state court. The Magistrate Judge further found that Petitioner has not demonstrated cause and prejudice for his procedural default. Specifically, the Magistrate Judge observed that ineffective assistance of appellate PCR counsel in not raising additional issues does not constitute cause.

Petitioner contends that the court should reach the merits of his defaulted claims because he received ineffective assistance of appellate counsel on direct review, and because appellate PCR counsel did not raise the claims Petitioner requested in the petition for writ of certiorari from the PCR judge's decision. However, as the Magistrate Judge noted, Petitioner raised his direct claims before the PCR judge, who ruled on the merits of the claims. See Order of Dismissal, 20-22, ECF No. 9-3, 64-66. Although the remaining grounds for relief were not raised to the Supreme Court in the petition for writ of certiorari, Petitioner is not entitled to raise ineffective assistance of PCR appellate counsel as cause for not properly raising the defaulted claims. See Johnson v. Warden, No. 12-7270, 2013 WL 856731, at *1 (4th Cir. March 8, 2013). Petitioner's objection is without merit.

CONCLUSION

For all these reasons, the court concludes that the PCR judge's rulings were not contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. Respondent's motion for summary

judgment (ECF No. 10) is **granted**.  Petitioner's § 2254 petition is denied and dismissed, with prejudice.

CERTIFICATE OF APPEALABILITY

A certificate of appealability will not issue absent "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  A prisoner satisfies this standard by demonstrating that reasonable jurists would find that any assessment of the constitutional claims by the district court is debatable or wrong and that any dispositive procedural ruling by the district court is likewise debatable.  Miller-El v. Cockrell, 537 U.S. 322, 336-38 (2003); Rose v. Lee, 252 F.3d 676, 683-84 (4th Cir. 2001).  The court concludes that Petitioner has not made the requisite showing.

**IT IS SO ORDERED**.

/s/ Margaret B. Seymour
Senior United States District Judge

Columbia, South Carolina

March 22, 2017

**NOTICE OF RIGHT TO APPEAL**

**Petitioner is hereby notified of the right to appeal this order pursuant to Rules 3 and 4 of the Federal Rules of Appellate Procedure.**